RICHARD T. BOWLES (#046234)
LAWRENCE D. GOLDBERG (#168142)
WILLIAM T. NAGLE (#180162)
BOWLES & VERNA, LLP
2121 N. California Boulevard Suite 875
Walnut Creek, California 94596
TELEPHONE: (925) 935-3300
FACSIMILE: (925) 935-0371
lgoldberg@bowlesverna.com

Attorneys for Plaintiff
DANVILLE MATERIALS, INC.,
successor-in-interest to
DANVILLE MANUFACTURING, d.b.a.
DANVILLE ENGINEERING

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANVILLE MATERIALS, INC., successor-in-interest to DANVILLE MANUFACTURING, INC., d.b.a., Danville Engineering, a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>BUFFALO DENTAL MANUFACTURING COMPANY, INC., a New York Corporation,<br><br>Defendant. | Case No.: CV 08 1794<br><br>**COMPLAINT FOR WILLFUL PATENT INFRINGEMENT, PATENT INFRINGEMENT, UNFAIR COMPETITION (BUSINESS & PROFESSIONS CODE §17200, ET SEQ.) AND COMMON LAW UNFAIR COMPETITION**<br><br><u>**JURY TRIAL DEMAND**</u> |

-1-

Bowles & Verna LLP
2121 N. California Blvd.
Suite 875
Walnut Creek 94596

COMPLAINT FOR WILLFUL PATENT INFRINGEMENT, PATENT INFRINGEMENT, UNFAIR COMPETITION (BUSINESS & PROFESSIONS CODE §17200, ET SEQ.) AND COMMON LAW UNFAIR COMPETITION; JURY TRIAL DEMAND

Plaintiff DANVILLE MATERIALS, INC., successor-in-interest to DANVILLE MANUFACTURING, INC., d.b.a., Danville Engineering ("DANVILLE"), for its complaint against defendant BUFFALO DENTAL MANUFACTURING COMPANY, INC. ("BUFFALO"), alleges as follows:

## THE PARTIES

1. DANVILLE is a California corporation with its principal place of business at 3420 Fostoria Way, Suite A-200, San Ramon, California.

2. DANVILLE is, and for many years has been, a pioneer engaged in the development, design, manufacture, marketing and sale of dental supplies and equipment.

3. Defendant BUFFALO is a New York corporation with its principal place of business at 129 Lafayette Dr., Syosset, NY 11791-0678.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction of the patent infringement claim herein pursuant to 28 U.S.C. § 1331 and 1338(a), as DANVILLE's claims arise under laws of the United States relating to patents, 35 U.S.C. § 271 *et seq.* This court has supplemental jurisdiction as to all other claims herein pursuant to 28 U.S.C. § 1367.

5. Venue is proper is this district under 28 U.S.C. §§ 1391(b) and (c), and 1400(b).

6. Upon information and belief, BUFFALO has regularly and continuously transacted business in this jurisdictional district by offering for sale, selling, causing to be used, and otherwise supplying removable nozzle heads for miniature sandblasters and sandblaster apparatuses within the scope of the claims of United States Letters Patent No. 5,765,759 ("the '759 patent") to distributors and other customers within this judicial district.

Bowles & Verna LLP
2121 N. California Blvd.
Suite 875
Walnut Creek 94596

-2-

COMPLAINT FOR WILLFUL PATENT INFRINGEMENT, PATENT INFRINGEMENT, UNFAIR COMPETITION (BUSINESS & PROFESSIONS CODE §17200, ET SEQ.) AND COMMON LAW UNFAIR COMPETITION; JURY TRIAL DEMAND

## FIRST CLAIM FOR RELIEF
### (Willful Infringement of the '759 Patent)

7. DANVILLE realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 6 of this Complaint.

8. On June 16, 1998, United States Letters Patent Number 5,765,759 was duly and legally issued by the United States Patent and Trademark Office to Craig R. Bruns, Thomas S. Blake and Mark S. Fernwood, for an invention entitled REMOVABLE NOZZLE FOR A SANDBLASTER HANDPIECE. The '759 patent, which was duly assigned to DANVILLE, relates to miniature sandblasters used for medical and industrial applications. A copy of the '759 patent is attached hereto as Exhibit A.

9. DANVILLE is the sole owner of the '759 patent by assignment and has the right to exclude others and to recover damages for infringement of the claims thereof.

10. Defendant BUFFALO has infringed and is infringing, has induced and is inducing others to infringe and/or has contributed and is contributing to the infringement by others of the '759 patent, by making, using, offering for sale, or selling, throughout the United States, products that infringe the claims of the '759 patent, and will continue to do so unless enjoined by this Court. The infringing products include removable nozzles for miniature sandblasters and sandblaster apparatuses marketed and sold by BUFFALO, including but not limited to products under the name Optiblast Micro-Sandblasting System. Additionally, BUFFALO's offering for sale, selling, causing to be used, and otherwise supplying removable nozzle heads for miniature sandblasters and sandblaster apparatuses infringes on the sandblasting method protected by the '759 patent.

11. Defendant BUFFALO has made and is making unlawful gains and profits from its direct infringement, inducement of infringement and/or contributory infringement of the '759 patent, and has thereby deprived and continues to deprive DANVILLE of rights and remunerations which would have accrued to DANVILLE but for said patent infringement.

Bowles & Verna LLP
2121 N. California Blvd.
Suite 875
Walnut Creek 94596

-3-

COMPLAINT FOR WILLFUL PATENT INFRINGEMENT, PATENT INFRINGEMENT, UNFAIR COMPETITION (BUSINESS & PROFESSIONS CODE §17200, ET SEQ.) AND COMMON LAW UNFAIR COMPETITION; JURY TRIAL DEMAND

12. DANVILLE is informed and believes and thereon alleges that Defendant's direct infringement, inducement of infringement and/or contributory infringement of the '759 patent is willful and in deliberate disregard of DANVILLE's rights thereunder.

13. As a result of the infringement, DANVILLE has suffered and will suffer damages.

14. DANVILLE is entitled to recover from BUFFALO damages sustained by DANVILLE as a result of the wrongful acts subject to proof at trial.

15. Unless BUFFALO is enjoined by this Court from continuing its infringement of the '759 patent, DANVILLE will suffer additional irreparable harm and impairment of its patent rights. Thus, DANVILLE is entitled to an injunction against further infringement.

## SECOND CLAIM FOR RELIEF
### (Infringement of the '759 Patent)

16. DANVILLE realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 15 of this Complaint.

17. Defendant BUFFALO has infringed and is infringing, has induced and is inducing others to infringe and/or has contributed and is contributing to the infringement by others of the '759 patent, by making, using, offering for sale, or selling, throughout the United States, products that infringe the claims of the '759 patent, and will continue to do so unless enjoined by this Court. The infringing products include removable nozzles for miniature sandblasters and sandblaster apparatuses marketed and sold by BUFFALO, including but not limited to products under the name Optiblast Micro-Sandblasting System. Additionally, BUFFALO's offering for sale, selling, causing to be used, and otherwise supplying removable nozzle heads for miniature sandblasters and sandblaster apparatuses infringes on the sandblasting method protected by the '759 patent.

18. Defendant BUFFALO has made and is making unlawful gains and profits from its direct infringement, inducement of infringement and/or contributory

-4-
COMPLAINT FOR WILLFUL PATENT INFRINGEMENT, PATENT INFRINGEMENT, UNFAIR COMPETITION (BUSINESS & PROFESSIONS CODE §17200, ET SEQ.) AND COMMON LAW UNFAIR COMPETITION; JURY TRIAL DEMAND

Bowles & Verna LLP
2121 N. California Blvd.
Suite 875
Walnut Creek 94596

infringement of the '759 patent, and has thereby deprived and continues to deprive DANVILLE of rights and remunerations which would have accrued to DANVILLE but for said patent infringement.

19. As a result of the infringement, DANVILLE has suffered and will suffer damages.

20. DANVILLE is entitled to recover from BUFFALO damages sustained by DANVILLE as a result of the wrongful acts subject to proof at trial.

21. Unless BUFFALO is enjoined by this Court from continuing its infringement of the '759 patent, DANVILLE will suffer additional irreparable harm and impairment of its patent rights. Thus, DANVILLE is entitled to an injunction against further infringement.

## THIRD CLAIM FOR RELIEF
(Violation of Cal. Bus. & Prof. Code Sec. 17200 et seq. --
Unlawful, Unfair and Fraudulent Business Practices)

22. DANVILLE realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 21 of this Complaint.

23. Defendant BUFFALO has engaged and continues to engage in unlawful, unfair and/or fraudulent business practices in violation of California Business & Professions Code Sections 17200 et seq. by, among other things, its knowing, willful and malicious infringement of the '759 patent to gain an unfair business advantage on DANVILLE.

24. Defendant's unfair business practices are allowing it to unjustly benefit from the success of DANVILLE's product, saving the defendant the time and expense associated with inventing a product.

25. DANVILLE is informed and believes, and on that basis alleges, that defendant has performed and continues to perform the acts described above with the deliberate intent to injure DANVILLE by competing with DANVILLE and soliciting the business of DANVILLE's customers.

Bowles & Verna LLP
2121 N. California Blvd.
Suite 875
Walnut Creek 94596

-5-

COMPLAINT FOR WILLFUL PATENT INFRINGEMENT, PATENT INFRINGEMENT, UNFAIR COMPETITION (BUSINESS & PROFESSIONS CODE §17200, ET SEQ.) AND COMMON LAW UNFAIR COMPETITION; JURY TRIAL DEMAND

26. Unless enjoined and restrained by this Court, defendant will continue to unfairly exploit DANVILLE's patent for its own purposes, to solicit DANVILLE customers, and to mislead and confuse dentists and medical suppliers into believing that BUFFALO is the innovator behind the '759 patent. Additional confusion arises by virtue of BUFFALO's sale of products associated with the Optiblast Micro-Sandblasting System, e.g. the Opti Workstation, which is so similar to DANVILLE's dust cabinets that it increases confusion that BUFFALO is the innovator behind the '759 patent when sold or offered for sale in association with the Optiblast Micro-Sandblasting System. All totaled, this causes irreparable injury and damage to DANVILLE and its business and property for which DANVILLE has no adequate remedy of law, and defendant will be unjustly enriched.

27. As a proximate result of defendant's misconduct, DANVILLE has lost numerous customers and sales to BUFFALO, and the profits and goodwill associated therewith, all to its damage in an amount to be proven at trial and to be trebled, and is threatened with other damage, including the loss of other customers, sales, profits and goodwill.

28. As a further direct and proximate result of defendant's misconduct, DANVILLE is threatened with damage to its reputation in the dental equipment and supply community and to its ability to compete for business.

## FOURTH CLAIM FOR RELIEF
### (Common Law Unfair Competition)

29. DANVILLE realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 28 of the complaint as though fully set forth at length herein.

30. By infringing on DANVILLE's '759 patent, BUFFALO has pirated the fruits of DANVILLE's labor and is "palming off" those fruits as its own to gain unearned commercial benefit.

Bowles & Verna LLP
2121 N. California Blvd.
Suite 875
Walnut Creek 94596

-6-

COMPLAINT FOR WILLFUL PATENT INFRINGEMENT, PATENT INFRINGEMENT, UNFAIR COMPETITION (BUSINESS & PROFESSIONS CODE §17200, ET SEQ.) AND COMMON LAW UNFAIR COMPETITION; JURY TRIAL DEMAND

31. DANVILLE is informed and believes, and on that basis alleges, that defendant has performed and continues to perform the acts described above with the deliberate intent to injure DANVILLE by competing with DANVILLE and soliciting the business of DANVILLE customers.

32. Unless enjoined and restrained by this Court, defendant will continue to unfairly exploit DANVILLE's patent for its own purposes, to solicit DANVILLE customers, and to mislead and confuse dentists and medical suppliers into believing that BUFFALO is the innovator of the '759 patent, causing irreparable injury and damage to DANVILLE and its business and property, for which DANVILLE has no adequate remedy at law, and defendants will be unjustly enriched.

33. As a proximate result of defendant's misconduct, DANVILLE has lost numerous customers and sales to BUFFALO, and the profits and goodwill associated therewith, all to its damage in an amount to be proven at trial, and is threatened with other damage, including the loss of other customers, sales, profits and goodwill.

34. As a further direct and proximate result of defendant's misconduct, DANVILLE is threatened with damage to its reputation in the dental equipment and supply community and to its ability to compete for business.

## PRAYER FOR RELIEF

WHEREFORE, DANVILLE prays for relief against defendant BUFFALO as follows:

1. For judgment declaring that BUFFALO has directly infringed, induced the infringement of and/or contributorily infringed United States Letters Patent No. 5,765,759.

2. That BUFFALO'S infringement, inducement and/or contribution to infringement has been willful.

3. For a preliminary (including enjoining BUFFALO from infringement, inducement and/or contribution to infringement during the pendency of the trial) and permanent injunction enjoining BUFFALO, its officers, agents, servants,

Bowles & Verna LLP
2121 N. California Blvd.
Suite 875
Walnut Creek 94596

-7-

COMPLAINT FOR WILLFUL PATENT INFRINGEMENT, PATENT INFRINGEMENT, UNFAIR COMPETITION (BUSINESS & PROFESSIONS CODE §17200, ET SEQ.) AND COMMON LAW UNFAIR COMPETITION; JURY TRIAL DEMAND

representatives, employees, attorneys, privies, successors and assigns, and all persons and entities holding by, through, or under it, and all those acting for it or on its behalf, or acting in concert with it, from directly or indirectly making or causing to be made, using or causing to be used, offering for sale or causing to be offered for sale, or selling or causing to be sold the removable nozzle for a sandblaster handpiece, sandblaster apparatuses, or any other product or methods which infringe DANVILLE's United States Letter Patent No. 5,765,759, and from any other further direct infringement, contributory infringement, or inducement of infringement of said patent as provided by law including 35 U.S.C. § 283.

4.  For monetary relief as follows:

   a.  A judgment requiring BUFFALO to pay DANVILLE damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by defendant, together with interest and costs as fixed by the court, caused by reason of defendant's infringement, inducement of infringement and/or contributory infringement of United States Letters Patent No. 5,765,759, including an accounting.

   b.  An order awarding DANVILLE treble damages in view of BUFFALO's intentional, willful and wanton violation of DANVILLE's patent rights, as well as prejudgment interest and DANVILLE's costs, expenses, and attorneys' fees in this action, as authorized by 35 U.S.C. §§ 284 and 285.

   c.  For restoration to DANVILLE of any and all monies and profits acquired by BUFFALO, and for disgorgement of same, acquired by means of any unfair business practices including patent infringement by defendant.

5.  For attorneys' fees and costs of suit as allowed by law;

6.  For such other, further and different relief as the Court deems just and proper.

Bowles & Verna LLP
2121 N. California Blvd.
Suite 875
Walnut Creek 94596

-8-

COMPLAINT FOR WILLFUL PATENT INFRINGEMENT, PATENT INFRINGEMENT, UNFAIR COMPETITION (BUSINESS & PROFESSIONS CODE §17200, ET SEQ.) AND COMMON LAW UNFAIR COMPETITION; JURY TRIAL DEMAND

## DEMAND FOR JURY TRIAL

DANVILLE demands a trial by jury for all claims for which a jury trial is available.

DATED: April 3, 2008

BOWLES & VERNA LLP

By _____
RICHARD T. BOWLES
LAWRENCE D. GOLDBERG
WILLIAM T. NAGLE
Attorneys for Plaintiff
DANVILLE MATERIALS, INC., successor-in-interest to DANVILLE MANUFACTURING, D.B.A. DANVILLE ENGINEERING

Bowles & Verna LLP
2121 N. California Blvd.
Suite 875
Walnut Creek 94596

-9-

COMPLAINT FOR WILLFUL PATENT INFRINGEMENT, PATENT INFRINGEMENT, UNFAIR COMPETITION (BUSINESS & PROFESSIONS CODE §17200, ET SEQ.) AND COMMON LAW UNFAIR COMPETITION; JURY TRIAL DEMAND





US005765759A

# United States Patent [19]
## Bruns et al.

[11] Patent Number: 5,765,759
[45] Date of Patent: Jun. 16, 1998

[54] **REMOVABLE NOZZLE FOR A SANDBLASTER HANDPIECE**

[75] Inventors: Craig R. Bruns; Thomas S. Blake; Mark S. Fernwood, all of Contra Costa, Calif.

[73] Assignee: Danville Engineering, San Ramon, Calif.

[21] Appl. No.: 562,528

[22] Filed: Nov. 27, 1995

[51] Int. Cl.⁶ ........................................... A62C 5/00
[52] U.S. Cl. ..................... 239/398; 239/433; 239/600; 433/88
[58] Field of Search ........................... 239/398, 407, 239/427, 433, 600; 433/83, 87, 88; 51/427, 438

[56] **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,641,087 | 6/1953 | Greiser | 51/12 |
| 2,744,361 | 5/1956 | Larson et al. | 51/11 |
| 3,164,153 | 1/1965 | Zorzi | 128/224 |
| 3,972,123 | 8/1976 | Black | 433/88 |
| 4,369,607 | 1/1983 | Bruggeman et al. | 51/427 |
| 4,522,597 | 6/1985 | Gallant | 433/216 |
| 4,676,749 | 6/1987 | Mabille | 433/88 |
| 4,776,794 | 10/1988 | Meller | 433/216 |
| 4,941,298 | 7/1990 | Fernwood et al. | 433/88 |
| 5,082,185 | 1/1992 | Evans | 239/433 |
| 5,094,615 | 3/1992 | Bailey | 433/88 |
| 5,199,229 | 4/1993 | Herold et al. | 433/88 |
| 5,203,698 | 4/1993 | Blake et al. | 433/88 |
| 5,350,299 | 9/1994 | Gallant | 433/88 |
| 5,468,148 | 11/1995 | Ricks | 433/80 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 1027336 | 11/1950 | France . |
| 19173 | 11/1992 | WIPO . |

*Primary Examiner*—Andres Kashnikow
*Assistant Examiner*—Lisa Ann Douglas
*Attorney, Agent, or Firm*—Cooley Godward LLP

[57] **ABSTRACT**

A removable nozzle head for a minature sandblaster used for medical or industrial applications is disclosed comprising a nozzle, a handpiece nozzle adapter, a nozzle locking ring where the nozzle and nozzle handapiece adapter each have corresponding first and second bore in fluid communication to allow delivery of independent supplies of a gas and an abrasive laden stream to a mixing chamber in the nozzle for delivery through a orifice tube to a surface to be abraded, cleaned or modified.

22 Claims, 4 Drawing Sheets



EXHIBIT A




FIG._1



FIG._2



FIG._3



FIG._4

**U.S. Patent**   Jun. 16, 1998   Sheet 4 of 4   5,765,759



FIG._5

5,765,759

1

# REMOVABLE NOZZLE FOR A SANDBLASTER HANDPIECE

## CROSS REFERENCES TO RELATED APPLICATIONS

There are no related pending applications.

### Background - Field of Invention

The present invention is directed to a nozzle head for the handpiece of a medical or industrial sandblaster apparatus. The sandblasting procedures encompassed range from cutting, cleaning, removing, modifying and prophylactic uses. In its primary field of use, dentistry, the device is useful in conjunction with a sandblasting apparatus to remove tooth structure for cavity preparation, remove existing composite fillings, roughen dental surfaces, whether tooth or restorative materials prior to adhesive bonding, to clean dental surfaces and a variety of other dental procedures known in the art. Industrial sandblasting applications are well known for which the described improved device is particularly well suited.

### Background - Description of Prior Art

Precision sandblasters of various types are well known in the prior art. Designs for particular types of removable nozzle heads are also well known. These nozzles can be thought of as a simple conduit where only one stream is transmitted through the nozzle and where no additional abrasive or other materials are mixed within the nozzle. The nozzle type described herein allows for additional material to be mixed with the primary material supplied to the nozzle, or alternatively allows two materials to be concurrently transported through a nozzle from a remote supply.

For most sandblasting procedures, the ability to rotate the nozzle to better direct the abrasive laden stream greatly increases the utility and ease of use. Prior miniature sandblasters similar to that described in this application including one previously patented by applicants do not incorporate removable nozzle means despite the fact that they have nozzle rotation means incorporated. In one of applicants prior patented sandblasters, Fernwood, U.S. Pat. No. 4,941,298, the nozzle is capable of being rotated 180 degrees from the center line of the handpiece. Continued rotation however can cause air and abrasive lines inside the handle to become twisted and pinched resulting in inconsistent sandblasting action. Further as the nozzle is not designed for easy removal, material which clogs the nozzle may require disassembly of the entire sandblaster. Although sterilization is of little concern in industrial applications, when used as a medical device sterilization between patients is important and can not be conveniently and economically accomplished with prior art devices. Devices like our prior sandblaster, Fernwood, U.S. Pat. No. 4,941,298 generally require sterilization by liquid chemicals for exposure times up to ten hours. Other prior art devices such as a device by Deldent, Ltd. (not patented) can be heat sterilized in shorter time periods but still require that the entire device be sterilized Nov. 25, 1995 because the nozzle is not designed to be removed during normal use.

### OBJECTS AND ADVANTAGES

The disclosed device shows a removable nozzle for a sandblaster with Accordingly, several objects and advantages of my invention are Objects and Advantages Description Still further objects and advantages will become appar-

2

ent from a consideration of the ensuing description and accompanying drawings.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of the nozzle head shown installed on a micro sandblaster.

FIG. 2 is a perspective drawing of the nozzle head assembly.

FIG. 3 is a side view of the nozzle.

FIG. 4 is a crossectional view of the nozzle head.

FIG. 5 is a perspective view of the nozzle and nozzle adapter.

### PREFERRED EMBODIMENT - DESCRIPTION

The improved nozzle head 1 comprising a nozzle, nozzle to handpiece adapter and a locking ring to hold the nozzle in direct contact with the nozzle adapter are illustrated installed on a microsandblaster in FIG. 1. FIG. 2 depicts a exploded view of the nozzle head. Shown in FIG. 2 is the nozzle 2, the nozzle adapter 3, the locking ring 4.

FIG. 3 depicts in greater detail the nozzle 2 which comprises generally the nozzle body 5, an acceleration jet 6, an exit orifice tube 7, a mixing chamber 8, and a first 9 and second 10 longitudinal bore for transmition of a gas and abrasive laden stream. Also shown in FIG. 3 is an exit orifice tube mount 11 which allows for easy removal in the event the exit tube becomes clogged, damaged or worn. The mount is an optional feature and could be eliminated by gluing or press fitting the exit orifice tube directly into the nozzle body. FIG. 3 also depicts a nozzle with an exit tube 7 angled downward at approximately a 60 degree angle. Various other angled tubes from zero degrees approaching to 180 degrees have been produced and are available depending upon the users applications. Now describing the nozzle body more specifically, FIG. 3 illustrates a first 9 and a second 10 longitudinal bore eminating from the rearward face 12 of the nozzle body also known as the nozzle adapter interface and terminating in the said mixing chamber 8. The first longitudinal bore 9 in the preferred embodiment acts as a conduit for a pressurized gas source passing in fluid connection through the gas acceleration orifice or jet and terminating in the mixing chamber. The first longitudinal bore eminates at the rearward end 12 of the nozzle body and is located at the central longitudinal axis 13 of the nozzle body. The second longitudinal bore 10 acts as a conduit for a stream of abrasive laden gas. The second bore eminates at the rearward face of the nozzle and is located radially from the central axis 13 of the nozzle and is in fluid communication with a centrally located annular groove 14 located in the rearward face of the nozzle. The second bore terminates in the mixing chamber and in the preferred embodiment has its central axis directed at the forward end 15 of the acceleration jet. At the rearward face of the nozzle, shown in FIG. 3 is a nozzle shoulder flange 16. The flange extends radially beyond the outer sides of the nozzle and provides a locking means to engage the nozzle locking ring and thereby secure the rearward face to the nozzle adapter.

Now turning to FIG. 4, the nozzle locking ring is shown installed. The nozzle locking ring slips over the exit orifice tube, over the nozzle body and engages the nozzle flange. In the preferred embodiment the nozzle locking ring has internal threads on the inner diameter which of course corresponds to the outer diameter threads of the forward end of the nozzle adapter. The nozzle locking ring is knurled on its outer diameter surface to allow for easy hand tightening.

5,765,759

3

FIG. 4 also depicts the nozzle adapter. The nozzle adapter comprises a nozzle adapter body, handpiece engagement means 18 and attachment means 19,20 for a first 21 and second 22 supply hose. In the preferred embodiment the nozzle adapter body is formed as a ring member, has first 23 and second 24 bores which when engaged with the nozzle provide for fluid communication between the first 9 and second 10 bores of the nozzle and the first 21 and second 22 supply hoses. The first and second bores corresponding to the first and second bore diameters in the nozzle body. Referring more specifically to FIG. 4, the nozzle adapter body has a forward end 25 and a rearward end 26. The first and second bores each have a pocket bore extending axially rearward. A first 19 and second 20 hollow plug is inserted and pressfit in each pocket bore. The first hollow plug serves as a slip-on means for a first supply line through which air is supplied. The second hollow plug serves as a slip-on means for a second supply line through which an abrasive laden gas stream passess.

Preferred Embodiment - Operation

Referring now to FIG. 5, the benefits of the described nozzle head are illustrated. For illustration purposes, although axially aligned the nozzle and nozzle adapter are not shown in face to face engagement and the locking ring is not depicted. During operation a gas passes through a first supply line through the first hollow plug and into the first 23 or center bore of the nozzle adapter and continues into the first 9 or center bore of the nozzle body eventually passing into the mixing chamber 8. Concurrently, a second supply line carrying a mixture of abrasive and a gas 27 passes through the second hollow plug through the second bore 24 of the nozzle adapter, and enters the corresponding second bore 10 of the nozzle body eventually passing into the mixing chamber where the two streams are mixed and then propelled through the exit orifice tube (not shown). When the nozzle body is rotated around its central longitudinal, the second bore of the nozzle adapter and the second bore of the nozzle body will no longer be axially aligned, they however remain in fluid communication through the annular groove 14 in the rearward face 12 of the nozzle body. FIG. 5 illustrates that when the second bores' 24, 10 are not axially aligned the abrasive exists the nozzle adapter, passes around and through the annular groove 14 and into the second bore of the nozzle body. The fact that the annular groove keeps both second bores' in fluid connection independent of the nozzle body rotation overcomes a significant disadvantage of existing designs.

In the preferred embodiment the nozzle body is fabricated of aluminum and the nozzle adapter of stainless steel. Altough the exact materials are somewhat insignificant, applicant feel that the more wear resistant material should be used for the nozzle adapter as compared to the nozzle body. With this material preference, the easily replaced nozzle body will wear out before the nozzle adapter which is generally affixed to the handpiece. The annular groove could be located in either the nozzle adapter or the nozzle body. For machining ease, in the preferred embodiment the annular groove is located in the softer nozzle body material.

The described removable nozzle head may be effectively used when the first and second supply line pressures are approximately equal. When the second supply line is at atmospheric pressure, the first supply line must be sufficiently pressurized such that the gas passing through the acceleration jet causes a venturi effect thereby creating a vaccuum on the second bores' and second supply line resulting in an urging of abrasive to flow into the mixing chamber. Generally air pressures in the range of 25 to 100 psi or more produce a sufficient venturi effect to urge abrasive particles into the mixing chamber. To avoid pressure or vaccuum losses from occuring between the second bores' at the interface between the nozzle body and the nozzle adapter, the faces' must be highly polished and aligned with high precision. Alternatively flexible sealing o-rings may be located at the interface between the nozzle flange and the locking ring internal diamter flange. For simplicity and economical reasons o-rings are used in the preferred embodiment.

In order to easily heat sterilize the nozzle, all components of the nozzle are fabricated from materials with operating temperatures of at least 400 degrees fahrenheit.

Applicants also note that the supply line could be changed without a problem if the supply streams are at roughly equal pressures. Additionally, the mixing chamber could be eliminated under an alternative embodiment where the intended desire is to deliver two independent streams beyond the nozzle exit orifice. For this alternative embodiment the nozzle head described herein can be easily modified to accomplish this intended objective by placing the acceleration jet in airtight fluid communication with the exit orifice tube such that the stream delivered through the first bore can not mix with second supply stream until both streams exit the nozzle. Under this configuration, the second stream delivered to the formerly labeled mixing chamber can be transported from the nozzle by second orifice exit tube, or by other means known to those skilled in the art such as longitudinal grooves along the sides of the first exit orifice tube.

It accordingly should be understood that various modifications and variations will no doubt occur to those skilled in the art to which this invention pertains. All such modifications and variations which basically rely on the teachings through which this disclosure has advanced the are therefore properly considered within the scope of this invention as defined by the appended claims.

Conclusions, Ramifications, and Scope

Accordingly, it can be seen that disclosed nozzle head provides a novel removable head which can be easily rotated, removed for repair, replacement or sterilization and can accomodate nozzles with varying angled orifice tubes.

Although the description above contains many specificities, these should not be construed as limiting the scope of the invention but as merely providing illustrations of some of the presently preferred embodiments of this invention. Various other embodiments and ramifications are possible within it's scope. Thus the scope of the invention should be determined by the appended claims and their legal equivalents, rather than by the examples given.

What is claimed is:

1. A nozzle head having a forward end and a rearward end, which nozzle head comprises
   a first longitudinal bore,
   a second longitudinal bore located radially from the first longitudinal bore,
   each first and second bore leading to a mixing chamber within the forward end of the nozzle head,
   an exit orifice tube leading out of the mixing chamber, and
   a face at the rearward end of the nozzle head, said face having an annular groove in fluid communication with said second longitudinal bore and having a centrally located opening for the first longitudinal bore not in fluid communication with the annular groove.

5,765,759

2. The nozzle head of claim 1 wherein the exit orifice tube is not removable from the nozzle head.

3. The nozzle head of claim 1 wherein an acceleration jet is located within the mixing chamber.

4. The nozzle head of claim 1 wherein the exit orifice tube is removable from the nozzle head.

5. The nozzle head of claim 4 wherein the exit orifice tube screws into the nozzle head.

6. The nozzle head of claim 1 wherein a shoulder flange extends radially beyond the outer side of the rearward end of the nozzle head.

7. The nozzle head of claim 6 in combination with a locking ring that engages the shoulder flange for attachment to a nozzle adapter.

8. A sandblaster apparatus that comprises (A) a nozzle head, (B) a nozzle head adapter, and (C) a locking ring to attach the nozzle head to the nozzle head adapter, wherein
   (A) the nozzle head has a forward end and a rearward end and further comprises
      a first longitudinal bore,
      a second longitudinal bore located radially from the first longitudinal bore,
      each first and second bore leading to a mixing chamber within the forward end of the nozzle head,
      an exit orifice tube leading out of the mixing chamber,
      a face at the rearward end of the nozzle head, said face having an annular groove in fluid communication with said second longitudinal bore and having a centrally located opening for the first longitudinal bore not in fluid communication with the annular groove, and a shoulder flange that extends radially beyond the outer side of the rearward end of the nozzle head;
   (B) the nozzle head adapter comprises a body having a forward end and rearward and a first fluid-carrying bore in fluid communication with said first longitudinal bore in the nozzle head and a second fluid-carrying bore in fluid communication with said annular grove and second longitudinal bore in the nozzle head; and
   (C) the locking ring engages the flange on the nozzle head to attach the nozzle head to the adapter.

9. The apparatus of claim 8 wherein the first longitudinal bore in the nozzle head and the first fluid carrying bore in the adapter are in fluid communication with a source of gas and the second longitudinal bore in the nozzle head and the second fluid-carrying bore in the adapter are in fluid communication with a source of a pressurized gas carrying abrasive particles, so that a stream of gas and a stream of gas carrying abrasive particles mix in the mixing chamber and exit through the exit tube.

10. The apparatus of claim 8 wherein an acceleration jet is located within the mixing chamber in the nozzle head.

11. The apparatus of claim 10 wherein the exit orifice tube is removable from the nozzle head.

12. The apparatus of claim 11 wherein the exit orifice tube screws into the nozzle head.

13. The apparatus of claim 12 wherein the exit orifice tube is not removable from the nozzle head.

14. The apparatus of claim 8 wherein the locking ring removably fits over the exit orifice tube and nozzle head to engage the shoulder flange to retain the rearward end of the nozzle head attached to the forward end of the nozzle head adapter.

15. The apparatus of claim 8 wherein the locking ring permanently attaches the nozzle head to the nozzle head adapter.

16. A method for abrading a surface using a nozzle head for a sandblaster handpiece in combination with a sandblaster handpiece, which method comprises
   positioning the sandblaster handpiece nozzle head over a surface to be abraded at an appropriate angle and distance while passing a gas through a first supply line and an abrasive material through a second supply line into a mixing chamber and into a nozzle head
   wherein said nozzle head comprises
      a first longitudinal bore,
      a second longitudinal bore located radially from the first longitudinal bore,
      each first and second bore leading to the mixing chamber within the forward end of the nozzle head,
      an exit orifice tube leading out of the mixing chamber, and
      a face at the rearward end of the nozzle head, said face having an annular groove in fluid communication with said second longitudinal bore and having a centrally located opening for the first longitudinal bore not in fluid communication with the annular groove.

17. The method of claim 16 wherein the exit orifice tube is not removable from the nozzle head.

18. The method of claim 16 wherein an acceleration jet is located within the mixing chamber.

19. The method of claim 16 wherein the exit orifice tube is removable from the nozzle head.

20. The method of claim 19 wherein the exit orifice tube screws into the nozzle head.

21. The method of claim 16 wherein a shoulder flange extends radially beyond the outer side of the rearward end of the nozzle head.

22. The method of claim 21 wherein the shoulder flange is combined with a locking ring that engages the shoulder flange for attachment to a nozzle adapter of the sandblaster.

* * * * *

JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

PVT

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

E-filing

## I. (a) PLAINTIFFS
Danville Materials, Inc., successor-in-interest to Danville Manufacturing, Inc., d.b.a., Danville Engineering, a California Corporation

### DEFENDANTS
Buffalo Dental Manufacturing Company, Inc., a New York Corporation

(b) County of Residence of First Listed Plaintiff  Contra Costa County, CA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Richard T. Bowles/Lawrence D. Goldberg/William T. Nagle
Bowles & Verna LLP
2121 North California Boulevard, Suite 875
Walnut Creek, California 94596

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS |  | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— Med. Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury — Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 |  | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | PROPERTY RIGHTS | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability |  | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | PERSONAL PROPERTY | [ ] 650 Airline Regs. | [x] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 690 Other |  | [ ] 490 Cable/Sat TV |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | LABOR | SOCIAL SECURITY | [ ] 810 Selective Service |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/Exchange |
| [ ] 195 Contract Product Liability |  |  | [ ] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 196 Franchise |  |  | [ ] 730 Labor/Mgmt.Reporting & Disclosure Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | [ ] 740 Railway Labor Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 892 Economic Stabilization Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | Habeas Corpus: | [ ] 791 Empl. Ret. Inc. Security Act |  | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | [ ] 530 General |  | FEDERAL TAX SUITS | [ ] 894 Energy Allocation Act |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty |  | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 895 Freedom of Information Act |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 540 Mandamus & Other | IMMIGRATION | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities – Other | [ ] 550 Civil Rights | [ ] 462 Naturalization Application |  | [ ] 950 Constitutionality of State Statutes |
|  | [ ] 440 Other Civil Rights | [ ] 555 Prison Condition | [ ] 463 Habeas Corpus – Alien Detainee |  |  |
|  |  |  | [ ] 465 Other Immigration Actions |  |  |

## V. ORIGIN (Place an "X" in One Box Only)

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
35 U.S.C. Section 271 et seq.
Brief description of cause:
Patent infringement action

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
- DEMAND $
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2) (PLACE AND "X" IN ONE BOX ONLY)
- [x] SAN FRANCISCO/OAKLAND
- [ ] SAN JOSE

DATE
April 3, 2008

SIGNATURE OF ATTORNEY OF RECORD

JS 44 Reverse (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.** **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: <u>47 USC 553</u>
Brief Description: <u>Unauthorized reception of cable service</u>

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.
**Date and Attorney Signature.** Date and sign the civil cover sheet.