RICHARD T. BOWLES (#046234)
LAWRENCE D. GOLDBERG (#168142)
WILLIAM T. NAGLE (#180162)
BOWLES & VERNA, LLP
2121 N. California Boulevard Suite 875
Walnut Creek, California 94596
TELEPHONE: (925) 935-3300
FACSIMILE: (925) 935-0371
lgoldberg@bowlesverna.com

Attorneys for Plaintiff
DANVILLE MATERIALS, INC.,
successor-in-interest to
DANVILLE MANUFACTURING, d.b.a.
DANVILLE ENGINEERING

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANVILLE MATERIALS, INC., successor-in-interest to DANVILLE MANUFACTURING, INC., d.b.a., Danville Engineering, a California Corporation, <br><br>     Plaintiff, <br><br> v. <br><br> BUFFALO DENTAL MANUFACTURING COMPANY, INC., a New York Corporation, <br><br>     Defendant. | Case No.: 5:08-CV-1794-PVT <br><br> **FIRST AMENDED COMPLAINT FOR WILLFUL PATENT INFRINGEMENT, PATENT INFRINGEMENT, UNFAIR COMPETITION (BUSINESS & PROFESSIONS CODE §17200, ET SEQ.) AND COMMON LAW UNFAIR COMPETITION** <br><br> **<u>JURY TRIAL DEMAND</u>** |

-1-

Bowles & Verna LLP
2121 N. California Blvd.
Suite 875
Walnut Creek 94596

1    Plaintiff DANVILLE MATERIALS, INC., successor-in-interest to DANVILLE

2    MANUFACTURING, INC., d.b.a., Danville Engineering ("DANVILLE"), for its

3    complaint against defendant BUFFALO DENTAL MANUFACTURING COMPANY,

4    INC. ("BUFFALO"), alleges as follows:

5    **THE PARTIES**

6    1.    DANVILLE is a California corporation with its principal place of business

7    at 3420 Fostoria Way, Suite A-200, San Ramon, California.

8    2.    DANVILLE is, and for many years has been, a pioneer engaged in the

9    development, design, manufacture, marketing and sale of dental supplies and

10   equipment.

11   3.    Defendant BUFFALO is a New York corporation with its principal place

12   of business at 129 Lafayette Dr., Syosset, NY 11791-0678.

13   **JURISDICTION AND VENUE**

14   4.    This Court has original jurisdiction of the patent infringement claim herein

15   pursuant to 28 U.S.C. § 1331 and 1338(a), as DANVILLE's claims arise under laws of

16   the United States relating to patents, 35 U.S.C. § 271 *et seq*.  This court has

17   supplemental jurisdiction as to all other claims herein pursuant to 28 U.S.C. § 1367.

18   5.    Venue is proper is this district under 28 U.S.C. §§ 1391(b) and (c), and

19   1400(b).

20   6.    Upon information and belief, BUFFALO has regularly and continuously

21   transacted business in this jurisdictional district by offering for sale, selling, causing to

22   be used, and otherwise supplying removable nozzle heads for miniature sandblasters

23   and sandblaster apparatuses within the scope of the claims of United States Letters

24   Patent Nos. 5,765,759 (including US 5,765,759 C1) and 6,149,509 to distributors and

25   other customers within this judicial district.

26

27

28

-2-

Bowles & Verna LLP
2121 N. California Blvd.
Suite 875
Walnut Creek 94596

FIRST AMENDED COMPLAINT FOR WILLFUL PATENT INFRINGEMENT, PATENT INFRINGEMENT, UNFAIR
COMPETITION (BUSINESS & PROFESSIONS CODE §17200, ET SEQ.) AND COMMON LAW UNFAIR COMPETITION; JURY
TRIAL DEMAND

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FIRST CLAIM FOR RELIEF
### (Willful Infringement of the '759 Patent)

7.    DANVILLE realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 6 of this First Amended Complaint.

8.    On June 16, 1998, United States Letters Patent Number 5,765,759 was duly and legally issued by the United States Patent and Trademark Office to Craig R. Bruns, Thomas S. Blake and Mark S. Fernwood, for an invention entitled REMOVABLE NOZZLE FOR A SANDBLASTER HANDPIECE, of which a Reexamination Certificate was subsequently issued on November 6, 2001 (US 5,765,759 C1) ("the '759 patent"). A copy of the '759 patent which includes the Reexamination Certificate is attached hereto as Exhibit A and incorporated herein by this reference.

9.    DANVILLE is the sole owner of the '759 patent by assignment and has the right to exclude others and to recover damages for infringement of the claims thereof.

10.    Defendant BUFFALO has infringed and is infringing, has induced and is inducing others to infringe and/or has contributed and is contributing to the infringement by others of the '759 patent, by making, using, offering for sale, or selling, throughout the United States, products that infringe the claims of the '759 patent, and will continue to do so unless enjoined by this Court. The infringing products include removable nozzles for miniature sandblasters and sandblaster apparatuses marketed and sold by BUFFALO, including but not limited to products under the name Optiblast Micro-Sandblasting System. Additionally, BUFFALO's offering for sale, selling, causing to be used, and otherwise supplying removable nozzle heads for miniature sandblasters and sandblaster apparatuses infringes on the sandblasting method protected by the '759 patent.

11.    Defendant BUFFALO has made and is making unlawful gains and profits from its direct infringement, inducement of infringement and/or contributory infringement of the '759 patent, and has thereby deprived and continues to deprive DANVILLE of rights and remunerations which would have accrued to DANVILLE but

-3-

1  for said patent infringement.

2      12.    DANVILLE is informed and believes and thereon alleges that Defendant's

3  direct infringement, inducement of infringement and/or contributory infringement of the

4  '759 patent is willful and in deliberate disregard of DANVILLE's rights thereunder.

5      13.    As a result of the infringement, DANVILLE has suffered and will suffer

6  damages.

7      14.    DANVILLE is entitled to recover from BUFFALO damages sustained by

8  DANVILLE as a result of the wrongful acts subject to proof at trial.

9      15.    Unless BUFFALO is enjoined by this Court from continuing its

10  infringement of the '759 patent, DANVILLE will suffer additional irreparable harm and

11  impairment of its patent rights.  Thus, DANVILLE is entitled to an injunction against

12  further infringement.

**SECOND CLAIM FOR RELIEF**
**(Infringement of the '759 Patent)**

15      16.    DANVILLE realleges and incorporates herein by reference the allegations

16  contained in Paragraphs 1 through 15 of this First Amended Complaint.

17      17.    Defendant BUFFALO has infringed and is infringing, has induced and is

18  inducing others to infringe and/or has contributed and is contributing to the

19  infringement by others of the '759 patent, by making, using, offering for sale, or selling,

20  throughout the United States, products that infringe the claims of the '759 patent, and

21  will continue to do so unless enjoined by this Court.  The infringing products include

22  removable nozzles for miniature sandblasters and sandblaster apparatuses marketed and

23  sold by BUFFALO, including but not limited to products under the name Optiblast

24  Micro-Sandblasting System.  Additionally, BUFFALO's offering for sale, selling,

25  causing to be used, and otherwise supplying removable nozzle heads for miniature

26  sandblasters and sandblaster apparatuses infringes on the sandblasting method protected

27  by the '759 patent.

28  //

-4-

FIRST AMENDED COMPLAINT FOR WILLFUL PATENT INFRINGEMENT, PATENT INFRINGEMENT, UNFAIR
COMPETITION (BUSINESS & PROFESSIONS CODE §17200, ET SEQ.) AND COMMON LAW UNFAIR COMPETITION; JURY
TRIAL DEMAND

1    18.    Defendant BUFFALO has made and is making unlawful gains and profits

2  from its direct infringement, inducement of infringement and/or contributory

3  infringement of the '759 patent, and has thereby deprived and continues to deprive

4  DANVILLE of rights and remunerations which would have accrued to DANVILLE but

5  for said patent infringement.

6    19.    As a result of the infringement, DANVILLE has suffered and will suffer

7  damages.

8    20.    DANVILLE is entitled to recover from BUFFALO damages sustained by

9  DANVILLE as a result of the wrongful acts subject to proof at trial.

10    21.    Unless BUFFALO is enjoined by this Court from continuing its

11  infringement of the '759 patent, DANVILLE will suffer additional irreparable harm and

12  impairment of its patent rights.  Thus, DANVILLE is entitled to an injunction against

13  further infringement.

14    **THIRD CLAIM FOR RELIEF**
    **(Willful Infringement of the '509 Patent)**
15

16    22.    DANVILLE realleges and incorporates herein by reference the allegations

17  contained in Paragraphs 1 through 21 of this First Amended Complaint.

18    23.    On November 21, 2000, United States Letters Patent Number 6,149,509

19  ("the '509 patent") was duly and legally issued by the United States Patent and

20  Trademark Office to Craig R. Bruns, Thomas S. Blake and Mark S. Fernwood for an

21  invention entitled REMOVABLE NOZZLE FOR A SANDBLASTER HANDPIECE.

22  The '509 patent is a continuation of application number 08/562,528, Nov. 27, 1995, Pat.

23  No. 5,765,759, referenced above.  A copy of the '509 patent is attached hereto as

24  Exhibit B and incorporated herein by this reference.

25    24.    DANVILLE is the sole owner of the '509 patent by assignment and has the

26  right to exclude others and to recover damages for infringement of the claims thereof.

27    25.    Defendant BUFFALO has infringed and is infringing, has induced and is

28  inducing others to infringe and/or has contributed and is contributing to the

-5-

1  infringement by others of the '509 patent, by making, using, offering for sale, or selling,

2  throughout the United States, products that infringe the claims of the '509 patent, and

3  will continue to do so unless enjoined by this Court.  The infringing products include

4  removable nozzles for miniature sandblasters and sandblaster apparatuses marketed and

5  sold by BUFFALO, including but not limited to products under the name Optiblast

6  Micro-Sandblasting System.  Additionally, BUFFALO's offering for sale, selling,

7  causing to be used, and otherwise supplying removable nozzle heads for miniature

8  sandblasters and sandblaster apparatuses infringes on the sandblasting method protected

9  by the '509 patent.

10         26.    Defendant BUFFALO has made and is making unlawful gains and profits

11  from its direct infringement, inducement of infringement and/or contributory

12  infringement of the '509 patent, and has thereby deprived and continues to deprive

13  DANVILLE of rights and remunerations which would have accrued to DANVILLE but

14  for said patent infringement.

15         27.    DANVILLE is informed and believes and thereon alleges that Defendant's

16  direct infringement, inducement of infringement and/or contributory infringement of the

17  '509 patent is willful and in deliberate disregard of DANVILLE's rights thereunder.

18         28.    As a result of the infringement, DANVILLE has suffered and will suffer

19  damages.

20         29.    DANVILLE is entitled to recover from BUFFALO damages sustained by

21  DANVILLE as a result of the wrongful acts subject to proof at trial.

22         30.    Unless BUFFALO is enjoined by this Court from continuing its

23  infringement of the '509 patent, DANVILLE will suffer additional irreparable harm and

24  impairment of its patent rights.  Thus, DANVILLE is entitled to an injunction against

25  further infringement.

26  //

27  //

28  //

-6-

Bowles & Verna LLP
2121 N. California Blvd.
Suite 875
Walnut Creek 94596

## FOURTH CLAIM FOR RELIEF
### (Infringement of the '509 Patent)

31.     DANVILLE realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 30 of this First Amended Complaint.

32.     Defendant BUFFALO has infringed and is infringing, has induced and is inducing others to infringe and/or has contributed and is contributing to the infringement by others of the '509 patent, by making, using, offering for sale, or selling, throughout the United States, products that infringe the claims of the '509 patent, and will continue to do so unless enjoined by this Court.  The infringing products include removable nozzles for miniature sandblasters and sandblaster apparatuses marketed and sold by BUFFALO, including but not limited to products under the name Optiblast Micro-Sandblasting System.  Additionally, BUFFALO's offering for sale, selling, causing to be used, and otherwise supplying removable nozzle heads for miniature sandblasters and sandblaster apparatuses infringes on the sandblasting method protected by the '509 patent.

33.     Defendant BUFFALO has made and is making unlawful gains and profits from its direct infringement, inducement of infringement and/or contributory infringement of the '509 patent, and has thereby deprived and continues to deprive DANVILLE of rights and remunerations which would have accrued to DANVILLE but for said patent infringement.

34.     As a result of the infringement, DANVILLE has suffered and will suffer damages.

35.     DANVILLE is entitled to recover from BUFFALO damages sustained by DANVILLE as a result of the wrongful acts subject to proof at trial.

36.     Unless BUFFALO is enjoined by this Court from continuing its infringement of the '509 patent, DANVILLE will suffer additional irreparable harm and impairment of its patent rights.  Thus, DANVILLE is entitled to an injunction against further infringement.

-7-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FIFTH CLAIM FOR RELIEF
### (Violation of Cal. Bus. & Prof. Code Sec. 17200 et seq. -- Unlawful, Unfair and Fraudulent Business Practices)

37.    DANVILLE realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 36 of this First Amended Complaint.

38.    Defendant BUFFALO has engaged and continues to engage in unlawful, unfair and/or fraudulent business practices in violation of California Business & Professions Code Sections 17200 et seq. by, among other things, its knowing, willful and malicious infringement of the '759 and '509 patents to gain an unfair business advantage on DANVILLE.

39.    Defendant's unfair business practices are allowing it to unjustly benefit from the success of DANVILLE's products, saving the defendant the time and expense associated with inventing a product.

40.    DANVILLE is informed and believes, and on that basis alleges, that defendant has performed and continues to perform the acts described above with the deliberate intent to injure DANVILLE by competing with DANVILLE and soliciting the business of DANVILLE's customers.

41.    Unless enjoined and restrained by this Court, defendant will continue to unfairly exploit DANVILLE's patents for its own purposes, to solicit DANVILLE customers, and to mislead and confuse dentists and medical suppliers into believing that BUFFALO is the innovator behind the '759 and '509 patents. Additional confusion arises by virtue of BUFFALO's sale of products associated with the Optiblast Micro-Sandblasting System, e.g. the Opti Workstation, which is so similar to DANVILLE's dust cabinets that it increases confusion that BUFFALO is the innovator behind the '759 and '509 patents when sold or offered for sale in association with the Optiblast Micro-Sandblasting System. All totaled, this causes irreparable injury and damage to DANVILLE and its business and property for which DANVILLE has no adequate remedy of law, and defendant will be unjustly enriched.

-8-

FIRST AMENDED COMPLAINT FOR WILLFUL PATENT INFRINGEMENT, PATENT INFRINGEMENT, UNFAIR COMPETITION (BUSINESS & PROFESSIONS CODE §17200, ET SEQ.) AND COMMON LAW UNFAIR COMPETITION; JURY TRIAL DEMAND

42.    As a proximate result of defendant's misconduct, DANVILLE has lost numerous customers and sales to BUFFALO, and the profits and goodwill associated therewith, all to its damage in an amount to be proven at trial and to be trebled, and is threatened with other damage, including the loss of other customers, sales, profits and goodwill.

43.    As a further direct and proximate result of defendant's misconduct, DANVILLE is threatened with damage to its reputation in the dental equipment and supply community and to its ability to compete for business.

## SIXTH CLAIM FOR RELIEF
### (Common Law Unfair Competition)

44.    DANVILLE realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 43 of this First Amended Complaint.

45.    By infringing on DANVILLE's '759 and '509 patents, BUFFALO has pirated the fruits of DANVILLE's labor and is "palming off" those fruits as its own to gain unearned commercial benefit.

46.    DANVILLE is informed and believes, and on that basis alleges, that defendant has performed and continues to perform the acts described above with the deliberate intent to injure DANVILLE by competing with DANVILLE and soliciting the business of DANVILLE customers.

47.    Unless enjoined and restrained by this Court, defendant will continue to unfairly exploit DANVILLE's patent for its own purposes, to solicit DANVILLE customers, and to mislead and confuse dentists and medical suppliers into believing that BUFFALO is the innovator of the '759 and '509 patents, causing irreparable injury and damage to DANVILLE and its business and property, for which DANVILLE has no adequate remedy at law, and defendants will be unjustly enriched.

48.    As a proximate result of defendant's misconduct, DANVILLE has lost numerous customers and sales to BUFFALO, and the profits and goodwill associated therewith, all to its damage in an amount to be proven at trial, and is threatened with

-9-

Bowles & Verna LLP
2121 N. California Blvd.
Suite 875
Walnut Creek 94596

FIRST AMENDED COMPLAINT FOR WILLFUL PATENT INFRINGEMENT, PATENT INFRINGEMENT, UNFAIR
COMPETITION (BUSINESS & PROFESSIONS CODE §17200, ET SEQ.) AND COMMON LAW UNFAIR COMPETITION; JURY
TRIAL DEMAND

1    other damage, including the loss of other customers, sales, profits and goodwill.

2        49.    As a further direct and proximate result of defendant's misconduct,

3    DANVILLE is threatened with damage to its reputation in the dental equipment and

4    supply community and to its ability to compete for business.

5                            **PRAYER FOR RELIEF**

6        WHEREFORE, DANVILLE prays for relief against defendant BUFFALO as

7    follows:

8        1.    For judgment declaring that BUFFALO has directly infringed, induced the

9    infringement of and/or contributorily infringed the '759 and '509 patents.

10        2.    That BUFFALO's infringement, inducement and/or contribution to

11    infringement has been willful.

12        3.    For a preliminary (including enjoining BUFFALO from infringement,

13    inducement and/or contribution to infringement during the pendency of the trial) and

14    permanent injunction enjoining BUFFALO, its officers, agents, servants,

15    representatives, employees, attorneys, privies, successors and assigns, and all persons

16    and entities holding by, through, or under it, and all those acting for it or on its behalf,

17    or acting in concert with it, from directly or indirectly making or causing to be made,

18    using or causing to be used, offering for sale or causing to be offered for sale, or selling

19    or causing to be sold the removable nozzle for a sandblaster handpiece, sandblaster

20    apparatuses, or any other product or methods which infringe DANVILLE's '759 and

21    '509 patents, and from any other further direct infringement, contributory infringement,

22    or inducement of infringement of said patents as provided by law including 35 U.S.C. §

23    283.

24        4.    For monetary relief as follows:

25            a.    A judgment requiring BUFFALO to pay DANVILLE damages

26    adequate to compensate for the infringement, but in no event less than a reasonable

27    royalty for the use made of the invention by defendant, together with interest and costs

28

Bowles & Verna LLP
2121 N. California Blvd.
Suite 875
Walnut Creek 94596

FIRST AMENDED COMPLAINT FOR WILLFUL PATENT INFRINGEMENT, PATENT INFRINGEMENT, UNFAIR
COMPETITION (BUSINESS & PROFESSIONS CODE §17200, ET SEQ.) AND COMMON LAW UNFAIR COMPETITION; JURY
TRIAL DEMAND

1  as fixed by the court, caused by reason of defendant's infringement, inducement of

2  infringement and/or contributory infringement of the '759 and '509 patents, including

3  an accounting.

4         b.    An order awarding DANVILLE treble damages in view of

5  BUFFALO's intentional, willful and wanton violation of DANVILLE's patent rights, as

6  well as prejudgment interest and DANVILLE's costs, expenses, and attorneys' fees in

7  this action, as authorized by 35 U.S.C. §§ 284 and 285.

8         c.    For restoration to DANVILLE of any and all monies and profits

9  acquired by BUFFALO, and for disgorgement of same, acquired by means of any unfair

10 business practices including patent infringement by defendant.

11     5.    For attorneys' fees and costs of suit as allowed by law;

12     6.    For such other, further and different relief as the Court deems just and

13 proper.

14                    **<u>DEMAND FOR JURY TRIAL</u>**

15     DANVILLE demands a trial by jury for all claims for which a jury trial is

16 available.

17 DATED: May 8, 2008                  BOWLES & VERNA LLP

18

19

20                          By _____

21                             RICHARD T. BOWLES
                               LAWRENCE D. GOLDBERG
22                             WILLIAM T. NAGLE
                               Attorneys for Plaintiff
23                             DANVILLE MATERIALS, INC.,
                               successor-in-interest to DANVILLE
24                             MANUFACTURING, D.B.A.
25                             DANVILLE ENGINEERING

26

27

28                                    -11-

FIRST AMENDED COMPLAINT FOR WILLFUL PATENT INFRINGEMENT, PATENT INFRINGEMENT, UNFAIR
COMPETITION (BUSINESS & PROFESSIONS CODE §17200, ET SEQ.) AND COMMON LAW UNFAIR COMPETITION; JURY
TRIAL DEMAND

# EXHIBIT A



US005765759A

# United States Patent [19]

## Bruns et al.

[11]   **Patent Number:        5,765,759**

[45]   **Date of Patent:        Jun. 16, 1998**

[54]   **REMOVABLE NOZZLE FOR A SANDBLASTER HANDPIECE**

[75]   Inventors: **Craig R. Bruns; Thomas S. Blake; Mark S. Fernwood.** all of Contra Costa, Calif.

[73]   Assignee: **Danville Engineering.** San Ramon. Calif.

[21]   Appl. No.: **562,528**

[22]   Filed:      **Nov. 27, 1995**

[51]   Int. Cl.$^6$ ...................................... **A62C 5/00**

[52]   U.S. Cl. .......................... **239/398; 239/433; 239/600; 433/88**

[58]   Field of Search ...................................... 239/398, 407, 239/427, 433, 600; 433/83, 87, 88; 51/427, 438

[56]                    **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,641,087 | 6/1953 | Grerser | 51/12 |
| 2,744,361 | 5/1956 | Larson et al. | 51/11 |
| 3,164,153 | 1/1965 | Zorzi | 128/224 |
| 3,972,123 | 8/1976 | Black | 433/88 |
| 4,369,607 | 1/1983 | Braggeman et al. | 51/427 |
| 4,522,597 | 6/1985 | Gallant | 433/216 |

| | | | |
|---|---|---|---|
| 4,676,749 | 6/1987 | Mabille | 433/88 |
| 4,776,794 | 10/1988 | Meller | 433/216 |
| 4,941,298 | 7/1990 | Funwood et al. | 433/88 |
| 5,082,185 | 1/1992 | Evans | 239/433 |
| 5,094,615 | 3/1992 | Bailey | 433/88 |
| 5,199,229 | 4/1993 | Herold et al. | 433/88 |
| 5,203,698 | 4/1993 | Blake et al. | 433/88 |
| 5,350,299 | 9/1994 | Gallant | 433/88 |
| 5,468,148 | 11/1995 | Ricks | 433/80 |

### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1027336 | 11/1950 | France | . |
| 19173 | 11/1992 | WIPO | . |

*Primary Examiner*—Andres Kashnikow
*Assistant Examiner*—Lisa Ann Douglas
*Attorney, Agent, or Firm*—Cooley Godward LLP

[57]                    **ABSTRACT**

A removable nozzle head for a miniature sandblaster used for medical or industrial applications is disclosed comprising a nozzle, a handpiece nozzle adapter, a nozzle locking ring where the nozzle and nozzle handpiece adapter each have corresponding first and second bore in fluid communication to allow delivery of independent supplies of a gas and an abrasive laden stream to a mixing chamber in the nozzle for delivery through a orifice tube to a surface to be abraded. cleaned or modified.

**22 Claims, 4 Drawing Sheets**



EXHIBIT A

Case 3:08-cv-01794-SI    Document 5    Filed 05/08/2008    Page 14 of 31



*FIG._1*



*FIG._2*



*FIG._3*



*FIG.-4*



FIG._5

5,765,759

1

## REMOVABLE NOZZLE FOR A SANDBLASTER HANDPIECE

### CROSS REFERENCES TO RELATED APPLICATIONS

There are no related pending applications.

### Background - Field of Invention

The present invention is directed to a nozzle head for the handpiece of a medical or industrial sandblaster apparatus. The sandblasting procedures encompassed range from cutting, cleaning, removing, modifying and prophylactic uses. In its primary field of use, dentistry, the device is useful in conjunction with a sandblasting apparatus to remove tooth structure for cavity preparation, remove existing composite fillings, roughen dental surfaces, whether tooth or restorative materials prior to adhesive bonding, to clean dental surfaces and a variety of other dental procedures known in the art. Industrial sandblasting applications are well known for which the described improved device is particularly well suited.

### Background - Description of Prior Art

Precision sandblasters of various types are well known in the prior art. Designs for particular types of removable nozzle heads are also well known. These nozzles can be thought of as a simple conduit where only one stream is transmitted through the nozzle and where no additional abrasive or other materials are mixed within the nozzle. The nozzle type described herein allows for additional material to be mixed with the primary material supplied to the nozzle, or alternatively allows two materials to be concurrently transported through a nozzle from a remote supply.

For most sandblasting procedures, the ability to rotate the nozzle to better direct the abrasive laden stream greatly increases the utility and ease of use. Prior miniature sandblasters similar to that described in this application including one previously patented by applicants do not incorporate removable nozzle means despite the fact that they have nozzle rotation means incorporated. In one of applicants prior patented sandblasters, Fernwood, U.S. Pat. No. 4,941,298, the nozzle is capable of being rotated 180 degrees from the center line of the handpiece. Continued rotation however can cause air and abrasive lines inside the handle to become twisted and pinched resulting in inconsistent sandblasting action. Further as the nozzle is not designed for easy removal, material which clogs the nozzle may require disassembly of the entire sandblaster. Although sterilization is of little concern in industrial applications, when used as a medical device sterilization between patients is important and can not be conveniently and economically accomplished with prior art devices. Devices like our prior sandblaster, Fernwood, U.S. Pat. No. 4,941,298 generally require sterilization by liquid chemicals for exposure times up to ten hours. Other prior art devices such as a device by Deldent, Ltd. (not patented) can be heat sterilized in shorter time periods but still require that the entire device be sterilized Nov. 25, 1995 because the nozzle is not designed to be removed during normal use.

### OBJECTS AND ADVANTAGES

The disclosed device shows a removable nozzle for a sandblaster with Accordingly, several objects and advantages of my invention are Objects and Advantages Description Still further objects and advantages will become appar-

2

ent from a consideration of the ensuing description and accompanying drawings.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of the nozzle head shown installed on a micro sandblaster.

FIG. 2 is a perspective drawing of the nozzle head assembly.

FIG. 3 is a side view of the nozzle.

FIG. 4 is a crossectional view of the nozzle head.

FIG. 5 is a perspective view of the nozzle and nozzle adapter.

### PREFERRED EMBODIMENT - DESCRIPTION

The improved nozzle head 1 comprising a nozzle, nozzle to handpiece adapter and a locking ring to hold the nozzle in direct contact with the nozzle adapter are illustrated installed on a microsandblaster in FIG. 1. FIG. 2 depicts a exploded view of the nozzle head. Shown in FIG. 2 is the nozzle 2, the nozzle adapter 3, the locking ring 4.

FIG. 3 depicts in greater detail the nozzle 2 which comprises generally the nozzle body 5, an acceleration jet 6, an exit orifice tube 7, a mixing chamber 8, and a first 9 and second 10 longitudinal bore for transmition of a gas and abrasive laden stream. Also shown in FIG. 3 is an exit orifice tube mount 11 which allows for easy removal in the event the exit tube becomes clogged, damaged or worn. The mount is an optional feature and could be eliminated by gluing or press fitting the exit orifice tube directly into the nozzle body. FIG. 3 also depicts a nozzle with an exit tube 7 angled downward at approximately a 60 degree angle. Various other angled tubes from zero degrees approaching to 180 degrees have been produced and are available depending upon the users applications. Now describing the nozzle body more specifically, FIG. 3 illustrates a first 9 and a second 10 longitudinal bore eminating from the rearward face 12 of the nozzle body also known as the nozzle adapter interface and terminating in the said mixing chamber 8. The first longitudinal bore 9 in the preferred embodiment acts as a conduit for a pressurized gas source passing in fluid connection through the gas acceleration orifice or jet and terminating in the mixing chamber. The first longitudinal bore eminates at the rearward end 12 of the nozzle body and is located at the central longitudinal axis 13 of the nozzle body. The second longitudinal bore 10 acts as a conduit for a stream of abrasive laden gas. The second bore eminates at the rearward face of the nozzle and is located radially from the central axis 13 of the nozzle and is in fluid communication with a centrally located annular groove 14 located in the rearward face of the nozzle. The second bore terminates in the mixing chamber and in the preferred embodiment has its central axis directed at the forward end 15 of the acceleration jet. At the rearward face of the nozzle, shown in FIG. 3 is a nozzle shoulder flange 16. The flange extends radially beyond the outer sides of the nozzle and provides a locking means to engage the nozzle locking ring and thereby secure the rearward face to the nozzle adapter.

Now turning to FIG. 4, the nozzle locking ring is shown installed. The nozzle locking ring slips over the exit orifice tube, over the nozzle body and engages the nozzle flange. In the preferred embodiment the nozzle locking ring has internal threads on the inner diameter which of course corresponds to the outer diameter threads of the forward end of the nozzle adapter. The nozzle locking ring is knurled on its outer diameter surface to allow for easy hand tightening.

5,765,759

**3**

FIG. 4 also depicts the nozzle adapter. The nozzle adapter comprises a nozzle adapter body, handpiece engagement means 18 and attachment means 19,20 for a first 21 and second 22 supply hose. In the preferred embodiment the nozzle adapter body is formed as a ring member, has first 23 and second 24 bores which when engaged with the nozzle provide for fluid communication between the first 9 and second 10 bores of the nozzle and the first 21 and second 22 supply hoses. The first and second bores corresponding to the first and second bore diameters in the nozzle body. Referring more specifically to FIG. 4. the nozzle adapter body has a forward end 25 and a rearward end 26. The first and second bores each have a pocket bore extending axially rearward. A first 19 and second 20 hollow plug is inserted and pressfit in each pocket bore. The first hollow plug serves as a slip-on means for a first supply line through which air is supplied. The second hollow plug serves as a slip-on means for a second supply line through which an abrasive laden gas stream passess.

**Preferred Embodiment - Operation**

Referring now to FIG. 5, the benefits of the described nozzle head are illustrated. For illustration purposes, although axially aligned the nozzle and nozzle adapter are not shown in face to face engagement and the locking ring is not depicted. During operation a gas passes through a first supply line through the first hollow plug and into the first 23 or center bore of the nozzle adapter and continues into the first 9 or center bore of the nozzle body eventually passing into the mixing chamber 8. Concurrently, a second supply line carrying a mixture of abrasive and a gas 27 passes through the second hollow plug through the second bore 24 of the nozzle adapter, and enters the corresponding second bore 10 of the nozzle body eventually passing into the mixing chamber where the two streams are mixed and then propelled through the exit orifice tube (not shown). When the nozzle body is rotated around its central longitudinal, the second bore of the nozzle adapter and the second bore of the nozzle body will no longer be axially aligned, they however remain in fluid communication through the annular groove 14 in the rearward face 12 of the nozzle body. FIG. 5 illustrates that when the second bores' 24, 10 are not axially aligned the abrasive exists the nozzle adapter, passes around and through the annular groove 14 and into the second bore of the nozzle body. The fact that the annular groove keeps both second bores' in fluid connection independent of the nozzle body rotation overcomes a significant disadvantage of existing designs.

In the preferred embodiment the nozzle body is fabricated of aluminum and the nozzle adapter of stainless steel. Altough the exact materials are somewhat insignificant, applicant feel that the more wear resistant material should be used for the nozzle adapter as compared to the nozzle body. With this material preference, the easily replaced nozzle body will wear out before the nozzle adapter which is generally affixed to the handpiece. The annular groove could be located in either the nozzle adapter or the nozzle body. For machining ease, in the preferred embodiment the annular groove is located in the softer nozzle body material.

The described removable nozzle head may be effectively used when the first and second supply line pressures are approximately equal. When the second supply line is at atmospheric pressure, the first supply line must be sufficiently pressurized such that the gas passing through the acceleration jet causes a venturi effect thereby creating a vaccuum on the second bores' and second supply line resulting in an urging of abrasive to flow into the mixing

**4**

chamber. Generally air pressures in the range of 25 to 100 psi or more produce a sufficient venturi effect to urge abrasive particles into the mixing chamber. To avoid pressure or vaccuum losses from occuring between the second bores' at the interface between the nozzle body and the nozzle adapter, the faces' must be highly polished and aligned with high precision. Alternatively flexible sealing o-rings may be located at the interface between the nozzle flange and the locking ring internal diamter flange. For simplicity and economical reasons o-rings are used in the preferred embodiment.

In order to easily heat sterilize the nozzle, all components of the nozzle are fabricated from materials with operating temperatures of at least 400 degrees fahrenheit.

Applicants also note that the supply line could be changed without a problem if the supply streams are at roughly equal pressures. Additionally, the mixing chamber could be eliminated under an alternative embodiment where the intended desire is to deliver two independent streams beyond the nozzle exit orifice. For this alternative embodiment the nozzle head described herein can be easily modified to accomplish this intended objective by placing the acceleration jet in airtight fluid communication with the exit orifice tube such that the stream delivered through the first bore can not mix with second supply stream until both streams exit the nozzle. Under this configuration, the second stream delivered to the formerly labeled mixing chamber can be transported from the nozzle by second orifice exit tube, or by other means known to those skilled in the art such as longitudinal grooves along the sides of the first exit orifice tube.

It accordingly should be understood that various modifications and variations will no doubt occur to those skilled in the art to which this invention pertains. All such modifications and variations which basically rely on the teachings through which this disclosure has advanced the are therefore properly considered within the scope of this invention as defined by the appended claims.

**Conclusions, Ramifications, and Scope**

Accordingly, it can be seen that disclosed nozzle head provides a novel removable head which can be easily rotated, removed for repair, replacement or sterilization and can accomodate nozzles with varying angled orifice tubes.

Although the description above contains many specificities, these should not be construed as limiting the scope of the invention but as merely providing illustrations of some of the presently preferred embodiments of this invention. Various other embodiments and ramifications are possible within it's scope. Thus the scope of the invention should be determined by the appended claims and their legal equivalents, rather than by the examples given.

What is claimed is:

1. A nozzle head having a forward end and a rearward end, which nozzle head comprises

a first longitudinal bore,

a second longitudinal bore located radially from the first longitudinal bore,

each first and second bore leading to a mixing chamber within the forward end of the nozzle head,

an exit orifice tube leading out of the mixing chamber, and

a face at the rearward end of the nozzle head, said face having an annular groove in fluid communication with said second longitudinal bore and having a centrally located opening for the first longitudinal bore not in fluid communication with the annular groove.

5,765,759

**5**

2. The nozzle head of claim 1 wherein the exit orifice tube is not removable from the nozzle head.

3. The nozzle head of claim 1 wherein an acceleration jet is located within the mixing chamber.

4. The nozzle head of claim 1 wherein the exit orifice tube is removable from the nozzle head.

5. The nozzle head of claim 4 wherein the exit orifice tube screws into the nozzle head.

6. The nozzle head of claim 1 wherein a shoulder flange extends radially beyond the outer side of the rearward end of the nozzle head.

7. The nozzle head of claim 6 in combination with a locking ring that engages the shoulder flange for attachment to a nozzle adapter.

8. A sandblaster apparatus that comprises (A) a nozzle head, (B) a nozzle head adapter, and (C) a locking ring to attach the nozzle head to the nozzle head adapter, wherein

(A) the nozzle head has a forward end and a rearward end and further comprises

a first longitudinal bore,

a second longitudinal bore located radially from the first longitudinal bore,

each first and second bore leading to a mixing chamber within the forward end of the nozzle head,

an exit orifice tube leading out of the mixing chamber,

a face at the rearward end of the nozzle head, said face having an annular groove in fluid communication with said second longitudinal bore and having a centrally located opening for the first longitudinal bore not in fluid communication with the annular groove, and a shoulder flange that extends radially beyond the outer side of the rearward end of the nozzle head;

(B) the nozzle head adapter comprises a body having a forward end and rearward and a first fluid-carrying bore in fluid communication with said first longitudinal bore in the nozzle head and a second fluid-carrying bore in fluid communication with said annular grove and second longitudinal bore in the nozzle head; and

(C) the locking ring engages the flange on the nozzle head to attach the nozzle head to the adapter.

9. The apparatus of claim 8 wherein the first longitudinal bore in the nozzle head and the first fluid carrying bore in the adapter are in fluid communication with a source of gas and the second longitudinal bore in the nozzle head and the second fluid-carrying bore in the adapter are in fluid communication with a source of a pressurized gas carrying abrasive particles, so that a stream of gas and a stream of gas carrying abrasive particles mix in the mixing chamber and exit through the exit tube.

10. The apparatus of claim 8 wherein an acceleration jet is located within the mixing chamber in the nozzle head.

**6**

11. The apparatus of claim 10 wherein the exit orifice tube is removable from the nozzle head.

12. The apparatus of claim 11 wherein the exit orifice tube screws into the nozzle head.

13. The apparatus of claim 12 wherein the exit orifice tube is not removable from the nozzle head.

14. The apparatus of claim 8 wherein the locking ring removably fits over the exit orifice tube and nozzle head to engage the shoulder flange to retain the rearward end of the nozzle head attached to the forward end of the nozzle head adapter.

15. The apparatus of claim 8 wherein the locking ring permanently attaches the nozzle head to the nozzle head adapter.

16. A method for abrading a surface using a nozzle head for a sandblaster handpiece in combination with a sandblaster handpiece, which method comprises

positioning the sandblaster handpiece nozzle head over a surface to be abraded at an appropriate angle and distance while passing a gas through a first supply line and an abrasive material through a second supply line into a mixing chamber and into a nozzle head

wherein said nozzle head comprises

a first longitudinal bore,

a second longitudinal bore located radially from the first longitudinal bore,

each first and second bore leading to the mixing chamber within the forward end of the nozzle head,

an exit orifice tube leading out of the mixing chamber, and

a face at the rearward end of the nozzle head, said face having an annular groove in fluid communication with said second longitudinal bore and having a centrally located opening for the first longitudinal bore not in fluid communication with the annular groove.

17. The method of claim 16 wherein the exit orifice tube is not removable from the nozzle head.

18. The method of claim 16 wherein an acceleration jet is located within the mixing chamber.

19. The method of claim 16 wherein the exit orifice tube is removable from the nozzle head.

20. The method of claim 19 wherein the exit orifice tube screws into the nozzle head.

21. The method of claim 16 wherein a shoulder flange extends radially beyond the outer side of the rearward end of the nozzle head.

22. The method of claim 21 wherein the shoulder flange is combined with a locking ring that engages the shoulder flange for attachment to a nozzle adapter of the sandblaster.

*   *   *   *   *



US005765759B1

(12) REEXAMINATION CERTIFICATE (4482nd)

# United States Patent
Bruns et al.

(10) **Number:** US 5,765,759 C1

(45) **Certificate Issued:** Nov. 6, 2001

(54) **REMOVABLE NOZZLE FOR A SANDBLASTER HANDPIECE**

(75) Inventors: **Craig R. Bruns; Thomas S. Blake; Mark S. Fernwood,** all of Contra Costa, CA (US)

(73) Assignee: **Danville Engineering,** San Ramon, CA (US)

**Reexamination Request:**
No. 90/005,803, Aug. 29, 2000

**Reexamination Certificate for:**

| | |
|---|---|
| Patent No.: | 5,765,759 |
| Issued: | Jun. 16, 1998 |
| Appl. No.: | 08/562,528 |
| Filed: | Nov. 27, 1995 |

(51) Int. Cl.[7] ............................... **B05B 7/04; A61C 3/02**

(52) U.S. Cl. ...................... **239/398; 239/433; 239/600; 433/88**

(58) Field of Search ..................................... 239/398, 407, 239/427, 433, 600; 433/83, 87, 88; 51/427, 438

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,421,702 | 1/1969 | O'Brien | 239/418 |
| 3,905,554 | 9/1975 | Bell | 239/424 |
| 4,648,840 | 3/1987 | Conger, Sr. | 433/125 |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 32 42 306 C2 | 5/1984 | (DE) | B05B/7/02 |
| 31 01 632 C2 | 8/1982 | (DE) | B05B/7/04 |
| 38 41 069 A1 | 3/1991 | (DE) | B05B/9/04 |
| 0 225 193 B1 | 6/1987 | (EP) | B05B/7/04 |
| 91/03640 | 3/1991 | (WO) | B05B/1/00 |

*Primary Examiner*—Lesley D. Morris

(57) **ABSTRACT**

A removable nozzle head for a miniature sandblaster used for medical or industrial applications is disclosed comprising a nozzle, a handpiece nozzle adapter, a nozzle locking ring where the nozzle and nozzle handapiece adapter each have corresponding first and second bore in fluid communication to allow delivery of independent supplies of a gas and an abrasive laden stream to a mixing chamber in the nozzle for delivery through a orifice tube to a surface to be abraded, cleaned or modified.



US 5,765,759 C1

**1**

## REEXAMINATION CERTIFICATE ISSUED UNDER 35 U.S.C. 307

### THE PATENT IS HEREBY AMENDED AS INDICATED BELOW.

Matter enclosed in heavy brackets [ ] appeared in the patent, but has been deleted and is no longer a part of the patent; matter printed in italics indicates additions made to the patent.

AS A RESULT OF REEXAMINATION, IT HAS BEEN DETERMINED THAT:

The patentability of claims 8–22 is confirmed.

Claim 6 is cancelled.

Claims 1 and 7 are determined to be patentable as amended.

Claims 2–5, dependent on an amended claim, are determined to be patentable.

New claims 23–30 are added and determined to be patentable.

1. A nozzle head having a forward end and a rearward end, which nozzle head comprises

a first longitudinal bore,

a second longitudinal bore located radially from the first longitudinal bore,

each first and second bore leading to a mixing chamber within the forward end of the nozzle head,

an exit orifice tube leading out of the mixing chamber, [and]

a face at the rearward end of the nozzle head, said face having an annular groove in fluid communication with said second longitudinal bore and having a centrally located opening for the first longitudinal bore not in fluid communication with the annular groove[.]*, and*

*a shoulder flange extending radially beyond the outer side of the rearward end of the nozzle head.*

**2**

7. The nozzle head of claim [6] *1* in combination with a locking ring that engages the shoulder flange for attachment to a nozzle adapter.

*23. A nozzle head for combination with a handpiece for use in medical or industrial sandblasting operations, the nozzle head having a forward end and a rearward end and comprising*

*a first longitudinal bore;*

*a second longitudinal bore located radially from the first longitudinal bore;*

*each first and second bore leading to a mixing chamber suitable for mixing abrasive particles with a gas stream, which chamber is within the forward end of the nozzle head;*

*an exit orifice tube leading out of the mixing chamber;*

*a face at the rearward end of the nozzle head, said face having an annular groove in fluid communication with said second longitudinal bore and having a centrally located opening for the first longitudinal bore not in fluid communication with the annular groove; and*

*means for removably securing the nozzle head to the handpiece so that the nozzle head may be rotated about a central longitudinal axis perpendicular to said face.*

*24. The nozzle head of claim 23, wherein the exit orifice tube is not removable from the nozzle head.*

*25. The nozzle head of claim 23, wherein an acceleration jet is located within the mixing chamber.*

*26. The nozzle head of claim 23, wherein the exit orifice tube is removable from the nozzle head.*

*27. The nozzle head of claim 26, wherein the exit orifice tube screws into the nozzle head.*

*28. The nozzle head of claim 23 wherein the means for removably securing the nozzle head is a shoulder flange extending radially beyond the outer side of the rearward end of the nozzle head.*

*29. The nozzle head of claim 28, in combination with a locking ring that engages the shoulder flange for attachment to a handpiece.*

*30. The nozzle head of claim 23, for combination with a handpiece for use in dental sandblasting operations.*

\*    \*    \*    \*    \*

# EXHIBIT B



US006149509A

# United States Patent [19]

## Bruns et al.

[11]  **Patent Number:**         **6,149,509**

[45]  **Date of Patent:**      *Nov. 21, 2000

[54] **REMOVABLE NOZZLE FOR A SANDBLASTER HANDPIECE**

[75] Inventors: **Craig R. Bruns; Thomas S. Blake; Mark S. Fernwood,** all of Danville, Calif.

[73] Assignee: **Danville Engineering,** San Ramon, Calif.

[ * ] Notice: This patent issued on a continued prosecution application filed under 37 CFR 1.53(d), and is subject to the twenty year patent term provisions of 35 U.S.C. 154(a)(2).

[21] Appl. No.: **09/067,787**

[22] Filed: **Apr. 28, 1998**

### Related U.S. Application Data

[63] Continuation of application No. 08/562,528, Nov. 27, 1995, Pat. No. 5,765,759.

[51] Int. Cl.[7] ...................................... **B24C 5/04**
[52] U.S. Cl. ............................. **451/90;** 451/102
[58] Field of Search ................................. 239/398, 407, 239/427, 433, 600; 433/83, 87; 451/90, 102

[56]          **References Cited**

#### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 2,641,087 | 6/1953 | Greiser . |
| 2,744,361 | 5/1956 | Larson et al. . |
| 3,164,153 | 1/1965 | Zorzi . |
| 3,421,702 | 1/1969 | O'Brien . |
| 3,905,554 | 9/1975 | Bell . |
| 3,972,123 | 8/1976 | Black ........................................ 451/90 |

| | | |
|---|---|---|
| 4,412,402 | 11/1983 | Gallant ........................ 451/102 X |
| 4,478,368 | 10/1984 | Yie .............................. 451/102 X |
| 4,522,597 | 6/1985 | Gallant ............................ 433/216 |
| 4,648,840 | 3/1987 | Conger . |
| 4,676,749 | 6/1987 | Mabille ............................ 433/88 |
| 4,776,794 | 10/1988 | Meller ............................ 433/216 |
| 4,913,353 | 4/1990 | Myers ........................ 451/102 X |
| 4,941,298 | 7/1990 | Funwood et al. ................... 433/88 |
| 5,054,249 | 10/1991 | Rankin ...................... 451/102 X |
| 5,082,185 | 1/1992 | Evans ............................ 239/433 |
| 5,094,615 | 3/1992 | Bailey ............................ 433/88 |
| 5,199,229 | 4/1993 | Herold et al. ...................... 433/88 |
| 5,203,698 | 4/1993 | Blake et al. ........................ 433/88 |
| 5,350,299 | 9/1994 | Gallant ............................ 433/88 |
| 5,468,148 | 11/1995 | Ricks ............................ 433/80 |

#### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 0 225 193 B1 | 6/1987 | European Pat. Off. . |
| 1027336 | 11/1950 | France . |
| 31 01 632 C2 | 8/1982 | Germany . |
| 32 42 306 C2 | 5/1984 | Germany . |
| 88 08 494 | 10/1988 | Germany . |
| 38 41 069 A1 | 8/1989 | Germany . |
| 91/03640 | 3/1991 | WIPO . |
| 19173 | 11/1992 | WIPO . |

*Primary Examiner*—Timothy V. Eley
*Attorney, Agent, or Firm*—Cooley Godward LLp

[57]          **ABSTRACT**

A removable nozzle head for a miniature sandblaster used for medical or industrial applications is disclosed comprising a nozzle, a handpiece nozzle adapter, a nozzle locking ring where the nozzle and nozzle handpiece adapter each have corresponding first and second bore in fluid communication to allow delivery of independent supplies of a gas and an abrasive laden stream to a mixing chamber in the nozzle for delivery through a orifice tube to a surface to be abraded, cleaned or modified.

**21 Claims, 4 Drawing Sheets**




EXHIBIT B

**U.S. Patent**    Nov. 21, 2000    Sheet 1 of 4    6,149,509



*FIG._1*

**U.S. Patent**      Nov. 21, 2000      Sheet 2 of 4      **6,149,509**



*FIG._2*



*FIG._3*



FIG._4



FIG._5

6,149,509

1

## REMOVABLE NOZZLE FOR A SANDBLASTER HANDPIECE

### CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation of U.S. Ser. No. 08/562, 528, filed Nov. 27, 1995 now U.S. Pat. No. 5,765,759.

### INTRODUCTION

1. Background—Field of the Invention

The present invention is directed to a nozzle head for the handpiece of a medical or industrial sandblaster apparatus. The sandblasting procedures encompassed range from cutting, cleaning, removing, modifying and prophylactic uses. In its primary field of use, dentistry, the device is useful in conjunction with a sandblasting apparatus to remove tooth structure for cavity preparation, remove existing composite fillings, roughen dental surfaces, whether tooth or restorative materials prior to adhesive bonding, to clean dental surfaces and a variety of other dental procedures known in the art. Industrial sandblasting applications are well known for which the described improved device is particularly well suited.

2. Background—Description of Prior Art

Precision sandblasters of various types are well known in the prior art. Designs for particular types of removable nozzle are also well known. These nozzles can be thought of as a simple conduit where only one stream is transmitted through the nozzle and where no additional abrasive or other materials are mixed within the nozzle. The nozzle type described herein allows for additional material to be mixed with the primary material supplied to the nozzle, or alternatively allows two materials to be concurrently transported through a nozzle from a remote supply.

For most sandblasting procedures, the ability to rotate the nozzle to better direct the abrasive laden stream greatly increases the utility and ease of use. Prior miniature sandblasters similar to that described in this application including one previously patented by applicants do not incorporate removable nozzle means despite the fact that they have nozzle rotation means incorporated. In one of applicant's prior patented sandblasters, Fernwood, U.S. Pat. No. 4,941, 298, issued Jul. 7, 1990, the nozzle is capable of being rotated 180 degrees from the center line of the handle. Continued rotation however can cause air and abrasive lines inside the handle to become twisted and pinched resulting in inconsistent sandblasting action. Further as the nozzle is not designed for easy removal, material which clogs the nozzle may require disassembly of the entire sandblaster. Although sterilization is of little concern in industrial applications, when used as a medical device sterilization between patients is important and can not be conveniently and economically accomplished with prior art devices. Devices like our prior sandblaster, Fernwood, U.S. Pat. No. 4,941,298, issued Jul. 17, 1990 generally require sterilization by liquid chemicals for exposure times up to ten hours. Other prior art devices such as a device by Deldent, Ltd (not patented) can be heat sterilized in shorter time periods but still require that the entire device be sterilized Nov. 25, 1995 because the nozzle is not designed to be removed during normal use.

### SUMMARY OF THE INVENTION

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of the nozzle head shown installed on a microsandblaster.

2

FIG. 2 is a perspective drawing of the nozzle head assembly.

FIG. 3 is a side view of the nozzle head.

FIG. 4 is a crossection view of the nozzle head, locking ring and nozzle head adapter.

FIG. 5 is a perspective view of the nozzle and nozzle head adapter.

### DESCRIPTION OF SPECIFIC EMBODIMENTS

The improved nozzle head 1 comprising a nozzle head, nozzle to handpiece adapter and a locking ring to hold the nozzle head in direct contact with the nozzle adapter are illustrated installed on a microsandblaster in FIG. 1.

FIG. 2 depicts a exploded view of the nozzle head assembly. Shown in FIG. 2 is the nozzle head 2, the nozzle adapter 3, and the locking ring 4.

FIG. 3 depicts in greater detail the nozzle head 2 which comprises generally the nozzle body 5, an acceleration jet 6, an exit orifice tube 7, a mixing chamber 8, and a first 9 and second 10 longitudinal bore for transmission of a gas and abrasive laden stream. Also shown in FIG. 3 is an exit orifice tube mount 11 which allows for easy removal in the event the exit tube becomes clogged, damaged or worn. The mount is an optional feature and could be eliminated by gluing or press fitting the exit orifice tube directly into the nozzle body. FIG. 3 also depicts a nozzle head with an exit tube 7 angled downward at approximately a 60 degree angle. Various other angled tubes from zero degrees approaching to 180 degrees have been produced and are available depending upon the users applications. Now describing the nozzle body more specifically, FIG. 3 illustrates a first 9 and a second 10 longitudinal bore emanating from the rearward face 12 of the nozzle body also known as the nozzle adapter interface and terminating in the said mixing chamber 8. The first longitudinal bore 9 in the preferred embodiment acts as a conduit for a pressurized gas source passing in fluid connection through the gas acceleration orifice or jet when terminating in the mixing chamber. The first longitudinal bore emanates at the rearward end 12 of the nozzle body and is located at the central longitudinal axis 13 of the nozzle body. The second longitudinal bore 10 acts as a conduit for a stream of abrasive laden gas. The second bore emanates at the rearward face of the nozzle body and is located radially from the central axis 13 of the nozzle body and is in fluid communication with a centrally located annular groove 14 located in the rearward face of the nozzle body. The second bore terminates in the mixing chamber and in the preferred embodiment has its central axis directed at the forward end 15 of the acceleration jet. At the rearward face of the nozzle body, shown in FIG. 3 is a nozzle shoulder flange 16. The flange extends radially beyond the outer sides of the nozzle head and provides a locking means to engage the nozzle locking ring and thereby secure the rearward face to the nozzle adapter.

Now turning to FIG. 4, the nozzle locking ring is shown installed. The nozzle locking ring slips over the exit orifice tube, over the nozzle body and engages the nozzle flange. In the preferred embodiment the nozzle locking ring has internal threads on the inner diameter which of course corresponds to the outer diameter threads of the forward end of the nozzle adapter. The nozzle locking ring is knurled on its outer diameter surface to allow for easy hand tightening. FIG. 4 also depicts the nozzle adapter. The nozzle adapter comprises a nozzle adapter body 17, handpiece engagement means 18 and attachment means 19,20 for a first 21 and second 22 supply hose. In the preferred embodiment the

6,149,509

3

nozzle adapter body is formed as a ring member, has first **23** and second **24** bores which when engaged with the nozzle head provide for fluid communication between the first **9** and second **10** bores of the nozzle head and the first **21** and second **22** supply hoses. The first and second bores corresponding to the first and second bore diameters in the nozzle body. Referring more specifically to FIG. 4, the nozzle adapter body has a forward end **25** and a rearward end **26**. The first and second bores each have a pocket bore extending axially rearward. A first **19** and second **20** hollow plug is inserted and pressfit in each pocket bore, The first hollow plug serves as a slip-on means for a first supply line through which air is supplied. The second hollow plug serves as a slip-on means for a second supply line through which an abrasive laden gas stream passes.

Referring now to FIG. 5, the benefits of the described nozzle head are illustrated. For illustration purposes, although axially aligned the nozzle head and nozzle adapter are not shown in face to face engagement and the locking ring is not depicted. During operation a gas passes through a first supply line through the first hollow plug and into the first **23** or center bore of the nozzle adapter and continues into the first **9** or center bore of the nozzle body eventually passing into the mixing chamber **8**. Concurrently, a second supply line carrying a mixture of abrasive and a gas **27** passes through the second hollow plug through the second bore **24** of the nozzle adapter, and enters the corresponding second bore **10** of the nozzle body eventually passing into the mixing chamber where the two streams are mixed and then propelled through the exit orifice tube (not shown). When the nozzle body is rotated around its central longitudinal, the second bore of the nozzle adapter and the second bore of the nozzle body will no longer be axially aligned, they however remain in fluid communication through the annular groove **14** in the rearward face **12** of the nozzle body (see also FIG. 4). FIG. 5 illustrates that when the second bores **24**, **10** are not axially aligned the abrasive exists the nozzle adapter, passes around and through the annular groove **14** and into the second bore of the nozzle body. The fact that the annular groove keeps both second bores in fluid connection independent of the nozzle body rotation overcomes a significant disadvantage of existing designs.

In the preferred embodiment, the nozzle body is fabricated of aluminum and the nozzle adapter of stainless steel. Although the exact materials are somewhat insignificant, applicant feel that the more wear resistant material should be used for the nozzle adapter as compared to the nozzle body. With this material preference, the easily replaced nozzle body will wear out before the nozzle adapter which is generally affixed to the handpiece. The annular groove could be located in either the nozzle adapter or the nozzle body. For machining ease, in the preferred embodiment the annular groove is located in the softer nozzle body material.

The described removable nozzle head may be effectively used when the first and second supply line pressures are approximately equal. When the second supply line is at atmospheric pressure, the first supply line must be sufficiently pressurized such that the gas passing through the acceleration jet causes a venturi effect thereby creating a vacuum on the second bores' second supply line resulting in an urging of abrasive to flow into the mixing chamber. Generally air pressures in the range of 25 to 100 psi or more produce a sufficient venturi effect to urge abrasive particles into the mixing chamber. To avoid pressure or vacuum losses from occurring between the second bores at the interface between the nozzle body and the nozzle adapter, the faces must be highly polished and aligned with high precision. Alternatively flexible sealing o-rings may be located at the interface between the nozzle flange and the

4

locking ring internal diameter flange. For simplicity and economical reasons o-rings are used in the preferred embodiment.

In order to easily heat sterilize the nozzle, all components of the nozzle are fabricated from materials with operating temperatures of at least 400 degrees Fahrenheit.

Applicants also note that the supply line could be changed without a problem if the supply streams are at roughly equal pressures. Additionally, the mixing chamber could be eliminated under an alternative embodiment where the intended desire is to deliver two independent streams beyond the nozzle exit orifice. For this alternative embodiment the nozzle head described herein can be easily modified to accomplish this intended objective by place the acceleration jet in airtight fluid communication with the exit orifice tube such that the stream delivered through the first bore can not mix with second supply stream until both streams exit the nozzle. Under this configuration, the second stream delivered to the formerly labeled mixing chamber can be transported from the nozzle by second orifice exit tube, or by other means known to those skilled in the art such as longitudinal grooves along the sides of the first exit orifice tube.

It accordingly should be understood that various modifications and variations will no doubt occur to those skilled in the art to which this invention pertains. All such modifications and variations which basically rely on the teachings through which this disclosure has advanced the are therefore properly considered within the scope of this invention as defined by the appended claims.

Accordingly, it can be seen that disclosed nozzle head provides a novel removable head which can be easily rotated, removed for repair, replacement or sterilization and can accommodate nozzles with varying angled orifice tubes.

Although the description above contains many specificities, these should not be construed as limiting the scope of the invention but as merely providing illustrations of some of the presently preferred embodiments of this invention. Various other embodiments and ramifications are possible within it's scope. Thus the scope of the invention should be determined by the appended claims and their legal equivalents, rather than by the examples given.

All publications and patent applications mentioned in this specification are herein incorporated by reference to the same extent as if each individual publication or patent application was specifically and individually indicated to be incorporated by reference.

The subject matter claimed is:

1. A device for directing an abrasive-laden gas stream against a surface, which device comprises
   (a) a pressurized gas source,
   (b) a source of abrasive materials,
   (c) a conduit for incorporating particles from the source of abrasive materials with the pressurized gas to form an abrasive-laden gas stream,
   (d) a handpiece having a conduit for the abrasive-laden gas stream and a separate conduit for pressurized gas, and
   (e) associated with the handpiece, a nozzle head for directing the abrasive-laden gas stream against a surface, wherein the nozzle head (i) is removable from the handpiece, (ii) has a mixing chamber into which the pressurized gas and the abrasive-laden gas stream flow, (iii) has an exit orifice tube leading from the mixing chamber through which the abrasive-laden gas stream may exit to be directed against a surface, and (iv) is rotatable relative to the handpiece.

2. The device of claim 1 wherein the nozzle head comprises a first longitudinal bore for providing a pressurized

6,149,509

5

gas stream and a second longitudinal bore for providing the abrasive-laden gas stream.

3. The device of claim 2 wherein the exit orifice tube is removable from the nozzle head.

4. The device of claim 3 wherein the exit orifice tube screws into the nozzle head.

5. The device of claim 2 wherein the removable nozzle head further comprises a radial shoulder flange positionable against the handpiece and a locking ring to engage the shoulder flange and attach to the handpiece.

6. The device of claim 5 wherein the nozzle head further comprises

a forward end and a rearward end,

the second longitudinal bore is located radially from the first longitudinal bore,

each first and second bore leads to the mixing chamber within the forward end of the nozzle head, and

a face is positioned at the rearward end of the nozzle head, said face having an annular groove in fluid communication with said second longitudinal bore and the face further having a centrally-located opening for the first longitudinal bore, said centrally-located opening not in fluid communication with the annular groove.

7. The device of claim 2 wherein an acceleration jet is located within the mixing chamber and in communication with the abrasive-laden gas stream.

8. A nozzle head in combination with a nozzle head adapter which combination is useful in a device for directing an abrasive-laden gas stream against a surface, wherein

the nozzle head has a forward end and a rearward end and comprises

a first longitudinal bore,

a second longitudinal bore located radially from the first longitudinal bore,

each first and second bore leading to a mixing chamber within the forward end of the nozzle head,

an exit orifice tube leading out of the mixing chamber, and

a face at the rearward end of the nozzle head, and

the nozzle head adapter comprises

a first longitudinal bore,

a second longitudinal bore located radially from the first longitudinal bore of the adapter,

a face at a forward end of the adapter to be aligned with the face at the rearward end of the nozzle head, said forward-end adapter face having an annular groove in fluid communication with said second longitudinal bore of the adapter so that when the rearward face of the nozzle head is aligned with the forward-end adapter face, the first longitudinal bore of the nozzle head communicates with the first longitudinal bore of the nozzle head adapter and the second longitudinal bore of the nozzle head and nozzle head adapter fluidly communicate with each other through the annular groove but do not communicate with first longitudinal bores of the nozzle head or nozzle head adapter, wherein the first longitudinal bore in the nozzle head and the first longitudinal bore in the nozzle head adapter are adapted for fluid communication with a source of pressurized gas and the second longitudinal bore in the nozzle head and the second longitudinal bore in the nozzle head adapter are adapted for fluid communication with a source of gas-carrying abrasive particles, so that a stream of gas and a stream of gas-carrying abrasive particles mix in the mixing chamber and exit through the exit tube.

6

9. The combination of claim 8 wherein an acceleration jet is located within the mixing chamber.

10. The combination of claim 8 wherein the exit orifice tube is removable from the nozzle head.

11. The combination of claim 10 wherein the exit orifice tube screws into the nozzle head.

12. The combination of claim 8 wherein the exit orifice tube is not removable from the nozzle head.

13. The combination of claim 8 wherein a shoulder flange extends radially beyond the outer side of the rearward end of the nozzle head to removably connect the nozzle head to the nozzle adapter.

14. The combination of claim 13 in combination with a locking ring that engages the shoulder flange for attachment of the nozzle head to the nozzle head adapter.

15. An apparatus that comprises (A) a nozzle head, (B) a nozzle head adapter, and (C) a locking ring to attach the nozzle head to the nozzle head adapter, wherein

(A) the nozzle head has a forward end and a rearward end and further comprises

a first longitudinal bore,

a second longitudinal bore located radially from the first longitudinal bore,

each first and second bore leading to a mixing chamber within the forward end of the nozzle head,

an exit orifice tube leading out of the mixing chamber,

a face at the rearward end of the nozzle head, and

a shoulder flange that extends radially beyond the outer side of the rearward end of the nozzle head;

(B) the nozzle head adapter comprises

a body having a forward end and rearward end,

a first fluid-carrying bore in fluid communication with said first longitudinal bore in the nozzle head,

a face at the forward end of the nozzle head adapter having an annular groove,

a second fluid-carrying bore in fluid communication with said annular groove and second longitudinal bore in the nozzle head, but not in fluid communication with the first longitudinal bore, and

(C) the locking ring engages the flange on the nozzle head to attach the nozzle head to the nozzle head adapter.

16. The apparatus of claim 15 wherein an acceleration jet is located within the mixing chamber of the nozzle head.

17. The apparatus of claim 16 wherein the exit orifice tube is removable from the mixing chamber of the nozzle head.

18. The apparatus of claim 17 wherein the exit orifice tube screws into the nozzle head.

19. The apparatus of claim 18 wherein the exit orifice tube is not removable from the nozzle head.

20. The apparatus of claim 15 wherein the locking ring removably fits over the exit orifice tube and nozzle head to engage the shoulder flange to retain the rearward end of the nozzle head attached to the forward end of the nozzle head adapter.

21. The apparatus of claim 15 wherein the first longitudinal bore in the nozzle head and the first fluid-carrying bore in the nozzle head adapter are in fluid communication with a source of pressurized gas and the second longitudinal bore in the nozzle head and the second fluid-carrying bore in the nozzle head adapter are in fluid communication with a source of a pressurized gas carrying abrasive particles, so that a stream of gas and a stream of gas carrying abrasive particles mix in the mixing chamber and exit through the exit tube.

* * * * *